UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT EARL HAWKINS,

            Plaintiff,

v.

CORIZON MEDICAL INC. and
KEITH PAPENDICK,

            Defendants.

_____/

Case No. 1:16-cv-890

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Robert Earl Hawkins, a state prisoner at a Michigan Department of Corrections (MDOC) facility. This matter is now before the Court on defendant Dr. Keith Papendick's motion for summary judgment (ECF No. 42).

### I.    Background

Plaintiff set forth the following allegations in his complaint. On or about November 3, 2015, Carson City Correctional Facility (DRF) on-site physician Dr. Scott L. Holmes discussed "dangerous abnormalities" in plaintiff's routine lab results, i.e., plaintiff's "blood count was below normal and it put him at a mild state of anemia." Amend. Compl. (ECF No. 11, PageID.40). Dr. Holmes ordered additional lab tests, which included stool cards which came back negative for blood on November 13, 2015, as well as blood tests performed on December 1, 2015. *Id.* On December 7, 2015, Dr. Holmes performed a follow-up examination. *Id.* At that time, plaintiff told Dr. Holmes that he had bad hemorrhoids that were causing him a lot of

1

pain, that when he has bowel movement there is blood in the stool and on the tissue, and that after a bowel movement a clear straw color fluid discharges from the hemorrhoids into his underwear. *Id*. The hemorrhoids significantly hampered plaintiff's daily activities, e.g., plaintiff informed the doctor hat he has shortness of breath and becomes lightheaded while exercising and that he felt extremely tired and weak after exercising. *Id*.

Dr. Holmes performed a visual exam with an anoscopy, which revealed that plaintiff had severe internal and external hemorrhoids, classified as stage IV hemorrhoids. *Id*. at PageID.42. Dr . Holmes informed plaintiff the severity of the hemorrhoids required surgery and that he was going to put in a request for the surgery. *Id*. Dr . Holmes submitted a request in which he stated that other options would not resolve the problem. *Id*. On December 9, 2015, defendant Dr. Papendick denied the request for surgery and recommended a trial of "conservative therapy." *Id*. Plaintiff alleged that based upon Dr. Holmes' request, defendant Dr. Papendick knew that these "conservative" methods would not be effective since plaintiff had stage IV hemorrhoids. On December 21, 2015, Dr . Holmes informed plaintiff that defendant denied the request for surgery. *Id*.

Plaintiff alleged that Dr. Papendick's action in denying the requested surgery violated his Eighth Amendment rights because he acted with deliberate indifference to plaintiff's serious medical needs, because 'the denial of surgery put Plaintiff at risk of being an [sic] anemia." *Id*. Plaintiff also alleged that the denial of surgery was cruel and unusual punishment because he "was forced to endure unnecessary constant pain after each bowel movement." *Id*. Plaintiff seeks punitive damages of $75,000.00. *Id*. at PageID.41.

2

## II.    Dr. Papendick's motion for summary judgment

### A.    Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).   "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

3

B.      **Eighth Amendment claim**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The Court construes plaintiff's Eighth Amendment claim as one for deliberate indifference for a serious medical need directed at Dr. Papendick. It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (l976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

4

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation. *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Whitley*, 475 U.S. at 319.

## C.     Affidavits and medical records

Dr. Papendick filed an affidavit setting forth the following facts. He is a licensed physician employed as the Utilization Management Outpatient Medical Director. Papendick Aff. (ECF No. 47, PageID.350). Dr. Papendick is not involved in the day-to-day medical care of inmates. *Id.* at PageID.351. Rather, his involvement with patient care involves "evaluation of requests for medical services and consultations that cannot be provided onsite at the correctional facility." *Id.* In making recommendations, Dr. Papendick reviews a medical provider's consultation request and the patient's relevant medical records, and uses his medical judgment to "make recommendations regarding the appropriate course of treatment, which may be approving the treatment requested, requesting additional information, or recommending an alternative treatment plan." *Id.* If a medical provider disagrees with the recommendation, there is an appeals process which includes further discussion with Dr. Papendick, the Regional Medical

Director, and the State Medical Director.  *Id.*  "If the provider is still dissatisfied, he or she can discuss further treatment options with the MDOC."  *Id.*

Dr. Papendick recounted his involvement in plaintiff's care as follows:

6.     I became involved with Mr. Hawkins' care on December 7, 2015. Dr. Holmes submitted a general surgery consultation request regarding Mr. Hawkins' hemorrhoids.

7.     Dr. Holmes stated that Mr. Hawkins had severe, chronic grade IV hemorrhoids, which were not resolving on their own or with topical anti-inflammatory medication.

8.     Based upon a review of Mr. Hawkins' chart, a general surgery consultation was not yet medically necessary, because Mr. Hawkins had not yet tried non-surgical treatment options. I recommended that Dr. Holmes consider a trial of continuous conservative therapy.

9.     On January 25, 2016, Dr. Holmes submitted a second request for a general surgery consultation.

10.    In the second consultation request, Dr. Holmes stated that despite Mr. Hawkins' compliance with the alternative treatment plan for one month, his situation was unchanged.

11.    On February 3, 2016, I approved the request for the general surgery consultation.

12.    On March 1, 2016, Dr. Holmes requested a hemorrhoidectomy procedure. I approved the request the following day.

13.    Mr. Hawkins had the hemorrhoidectomy with Dr. O'Connor on April 14, 2016.

Papendick Aff. at PageID.351-352.  Dr. Papendick's recitation of plaintiff's medical history is consistent with the MDOC records.

After the denial of a surgical consultation request on December 8, 2015, Dr. Holmes ordered plaintiff treatment with fiber, topical cream, and Tucks pads for approximately one month (December 22, 2015 to January 22, 2016).   Medical Records (ECF No. 44-1, PageID.280, 283-

287).   Dr. Holmes reassessed plaintiff on January 25, 2016.   While the records reflect that plaintiff reported no change in the situation, plaintiff also commented that "somedays it bleeds, somedays it don't" and that "fiber make it so use the BR easier [sic]".   *Id.* at PageID.291.   At that time, Dr. Holmes doctor noted that "anal inspection reveals prolapsed IH which appear to be transitioning from acute to chronic phase large prolapsed skin tags are noted bilaterally" and included a treatment plan for re-submitting a surgical consultation.   *Id.* at PageID.292.   Later that day, Dr. Holmes re-submitted a surgical consultation, stating that the hemorrhoids are severe, chronic, bring the patient to a state of anemia, and do not appear to be resolving on their own or with topical anti-inflammatory prescription.   *Id.* at PageID.293.   Dr. Papendick approved the request for a surgical consultation on February 3, 2016.   *Id.* at PageID.296.   Plaintiff saw the surgeon, Dr. O'Connor, on February 24, 2016.   *Id.* at Page.ID 300.   After examination, Dr. O'Connor recommended a hemorrhoidectomy at the Carson City Hospital.   *Id.*   Dr. Papendick approved that procedure and Dr. O'Connor performed the hemorrhoidectomy on April 14, 2016. *Id.* at PageID.303-306, 314-316.

           In his response, plaintiff contends that the motion should be denied, in part, because Dr. Papendick's affidavit filed with the brief (ECF No. 42-2) was not signed.   Plaintiff's contention is without merit.   Defendant's brief included a footnote stating that, "Dr. Papendick currently is recovering from major surgery and has not been able to get to a notary to execute his affidavit due to his medical condition.   Defendant will file an executed and notarized version of this affidavit as soon as possible."   Defendant's Brief (ECF No. 42, PageID.257).   Counsel filed a copy of Dr. Papendick's signed and notarized affidavit on March 23, 2018 (ECF No. 47).

Plaintiff also filed a declaration setting forth facts which supported the allegations in the complaint and included the following information: that Dr. Holmes told plaintiff that he had "severe and external hemorrhoids"; that Dr. Holmes "told me that I have stage IV hemorrhoids and that means that surgery option to relieve me of my hemorrhoids"; that "Dr. Holmes order [sic] me some Anusol-HC rectal cream and pain tablet until I received the surgery"; and that "[o]n December 21, 2015, Dr. Holmes informed me that Defendant denied the request for surgery." Hawkins Decl. (ECF No. 46-1, PageID.339-342).

### D.   Discussion

Plaintiff contends that Dr. Papendick violated his Eight Amendment rights by denying Dr. Holme's first request for a surgical consultation.[1]   Plaintiff's claim fails. Dr. Papendick did not ignore plaintiff's medical condition when he denied Dr. Holme's first request for a surgical consultation and recommended one month of conservative therapy.   Rather, Dr. Papendick determined that a surgical consultation was not yet medically necessary because plaintiff had not tried non-surgical treatment options.   "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state

---

[1]The Court notes that defendant's brief includes a reference to case law applicable to an Eighth Amendment claim for delayed treatment.   This claim is not before the Court.   As discussed, plaintiff alleged that Dr. Papendick was deliberately indifferent for denying Dr. Holmes' first request for a surgical consultation.   Plaintiff did not allege events that occurred after he completed the one month of conservative therapy, i.e., that Dr. Papendick approved the second request for a surgical consultation and that the surgery was performed in April 2016.   *See* Amend. Compl. (ECF No. 11).   Nor did plaintiff allege that he suffered a detrimental effect due to a delay in treatment.   *Id.*   On the contrary, plaintiff's response clarifies that his claim is limited to the doctor's denial of the first request for a surgical consultation. "Plaintiff's Eighth Amendment claim is based on Defendant denying him surgery on December 8, 2015. . . This Court should narrow it [sic] focus to Defendant's December 8, 2015, denial to determine whether, viewing all inferences in Plaintiff's favor, Defendant acted with deliberate indifference towards Plaintiff's serious medical need." Plaintiff's Response (ECF No. 46, PageID.333).

tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004).   When a plaintiff prisoner disagrees with a defendant health care provider's medical judgment and wants to have treatment contrary to that judgment, this disagreement does not rise to the level of a federal constitutional claim.  *See Woodberry v. Simmons*, 146 Fed. Appx. 976, 977 (10th Cir. 2005) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference"); *Owens v. Hutchinson*, 79 Fed. Appx. 159, 161 (6th Cir. 2003) ("[a] patient's disagreement with his physicians over the proper medical treatment alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable as a federal constitutional claim"); *Wright v. Genovese*, 694 F.Supp.2d 137, 155 (N.D.N.Y. 2010) ("[d]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment").

Furthermore, plaintiff cannot base his Eighth Amendment claim on an alleged disagreement between Dr. Papendick and Dr. Holmes on how to treat his hemorrhoids.  As an initial matter, Dr. Holmes apparently agreed with Dr. Papendick's recommendation to try a one month course of conservative treatment because he did not appeal that recommendation.   Even if Dr. Holmes had disagreed with Dr. Papendick's recommendation to pursue a one month course of conservative treatment rather than an immediate surgical consultation, a difference in medical opinion is not actionable under § 1983.  *Lane v. Wexford Health Sources (Contreator)*, 510 Fed. Appx. 385, 388 (6th Cir. 2013), citing *Estelle*, 429 U.S. at 107.  *See Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996) ("differences of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference"); *Ross v.*

*Dominguez-Bem*, No. 1:15-cv-218, 2017 WL 933237 at *8 (W.D. Mich. Feb. 2, 2017), report and recommendation approved, 2017 WL 915343 (March 8, 2017) (finding that a difference of opinion between a prisoner's doctors on how to treat a medical condition does not constitute deliberate indifference, citing *Lane* and *Estate of Cole*).   Accordingly, defendant Dr. Papendick's motion for summary judgment should be granted.

### III.   Recommendation

For the reasons set forth above, I respectfully recommend that defendant Dr. Papendick's motion for summary judgment (ECF No. 42) be **GRANTED** and that this action be **TERMINATED**.

Dated: August 13, 2018                          /s/ Ray Kent
                                                Ray Kent
                                                United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).